# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| JENNIFER WOJCIESKI, DONNA KIJEK, and BARBARA MOLLBERG, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1023 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **Jury Trial Demanded** |
| GLOBAL CREDIT & COLLECTION CORP., | |
| Defendant. | |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Jennifer Wojcieski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Donna Kijek is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Barbara Mollberg is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

7. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from her arose from an agreement, or series of agreements, to defer payment.

8. Defendant Global Credit & Collection Corporation ("GCC") is a foreign business corporation with its principal offices located at 5440 North Cumberland Suite 300, Chicago Illinois 60656.

9. GCC does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at C T Corporation System, 301 South Bedford Street Suite 1, Madison, Wisconsin 53703.

10. GCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11. GCC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

12. GCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## **FACTS**

### ***Facts Related to Plaintiff Wojceiski***

13. On or about July 26, 2018, GCC mailed a debt collection letter to Plaintiff Wojceiski regarding an alleged debt owed to "HSNi, LLC." A copy of this letter is attached to this Complaint as Exhibit A.

2

14. Upon information and belief, the alleged debt referenced in Exhibit A was allegedly a credit account, which was used only for personal, family, or household purposes, including purchases of household goods.

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Wojceiski inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter, used by GCC to attempt to collect alleged debts.

17. Upon information and belief, Exhibit A was the first written communication GCC sent to Plaintiff Wojceiski regarding this alleged debt.

18. The reverse side of Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**IMPORTANT NOTICE OF YOUR RIGHTS UNDER FEDERAL LAW**

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

We are a debt collector. This is an attempt to collect this debt and any information obtained will be used for that purpose.

19. Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount of the debt Defendant is attempting to collect.

20.     The header in <u>Exhibit A</u> contains the following:

| | |
|---|---|
| Creditor: | HSNi, LLC |
| Global ID: | ████8047 |
| Account Number: | **********8680 |
| Current Balance: | $3.97 |
| Total Grouped Amount Owing: | $72.87 |
| Web Password: | ███████ |

21.     The body in <u>Exhibit A</u> states:

Your HSNi, LLC account has been placed with Global Credit & Collection Corp., a collection agency. As soon as we receive your payment in full on the above-noted account all collection activity will be stopped.

22.     <u>Exhibit A</u> also contains a payment remittance slip, which contains the following:

| | |
|---|---|
| Creditor: | HSNi, LLC |
| Global ID: | ████8047 |
| Total Grouped Amount Owing: | $72.87 |

Please remit your payment to:

|||||||||||||||||||||||||||||||||||||||||||||||||||

Global Credit & Collection Corp.
PO Box 2127
Schiller Park, IL 60176-1956

23.     <u>Exhibit A</u> is confusing and misleading to the unsophisticated consumer. The consumer would have no way to know whether Defendant is collecting the "Current Balance" of $3.97 or the "Total Grouped Amount Owing" of $72.87.

24.     The header in <u>Exhibit A</u> represents the "Current Balance" to be $3.97, but also states that there is something called a "Total Grouped Amount Owing" of $72.87.

25.     The payment remittance slip restates the "Total Grouped Amount Owing."

26.     In the context of debt collection, the unsophisticated consumer would understand the phrase "Current Balance" to mean the entire amount owed at the present time.

4

27.     On its face, it is unclear what the "Total Grouped Amount Owing" refers to.

28.     One possibility is that the "Total Grouped Amount Owing" is the total balance of the one account, with only the "Current Balance" actually *due* at the time Exhibit A was mailed.

29.     Another possibility is that the "Total Grouped Amount Owing" refers to several different accounts that Defendant is attempting to collect from Plaintiff Wojceiski on behalf of HSN, with the "Current Balance" referring to the balance of the account ending in 8680.

30.     Another possibility is that the "Total Grouped Amount Owing" refers to several accounts that GCC is attempting to collect from Plaintiff Wojceiski on behalf of several *different creditors*, with the "Current Balance" referring to the balance of the account ending in 8680, which is the only debt actually owed to HSN.

31.     In the context of debt collection, the amount "due" and the amount "owing" are different concepts. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *see also*, *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector violates the FDCPA by confusing consumer or misleading the consumer to believe it is collecting portions of the balance which "might not yet be due, let alone overdue.").

32.     Plaintiff Wojceiski was confused by Exhibit A.

33.     The unsophisticated consumer would be confused by Exhibit A.

### *Facts Related to Plaintiff Kijek*

34.     On or about July 17, 2018, GCC mailed a debt collection letter to Plaintiff Kijek regarding an alleged debt owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this complaint as Exhibit B.

35.     Upon information and belief, the alleged debt that GCC was attempting to collect was a consumer credit card account, used only for personal, family, or household purposes.

36.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Kijek inserted by computer.

37.     Exhibit B contains the following:

> Your THE HOME DEPOT account remains outstanding with Global Credit & Collection Corp. We understand that you may be going through some financial hardship, and as such we are willing to offer you one of the following options to help you resolve this issue. Please note that the offers listed below will expire on August 1, 2018.

38.     Exhibit B includes the following offers:

> OPTION 1
> We are willing to accept $730.44 in one payment to settle this account in full. This will save you $597.63 (45% off your current balance)!
> OPTION 2
> If you have intentions to pay off this account, but are not in the current position to settle the account, please do not be discouraged. We want to do everything in our power to help you resolve this debt, even if that means you make small monthly payments until the balance is paid off, or until a time when you can arrange a settlement offer with our office. Call us today to arrange a satisfactory payment arrangement. No reasonable offer will be denied.

39.     The plan described in "OPTION 2" is not actually a settlement offer, it is an option to keep the possibility of a future settlement open by tendering "small monthly payments."

40.     "OPTION 2" implies to the unsophisticated consumer that a future settlement offer would only be available to Kijek if she began to make monthly payments on her alleged debt on or before August 1, 2018, when Option 2 expires.

6

41.     Upon information and belief, GCC and Citibank would have agreed to settle the account for an amount less than total balance at any time notwithstanding whether Kijek had been making "small monthly payments."

42.     Exhibit B is thus misleading insofar as it implies that future settlement is contingent on the consumer making payments according to such a schedule.

43.     Plaintiff Kijek was confused by Exhibit B.

44.     The unsophisticated consumer would be confused by Exhibit B.

45.      Plaintiff Kijek had to spend time and money investigating Exhibit B and the consequences of any potential responses to Exhibit B.

### *Facts Related to Plaintiff Mollberg*

46.     On or about July 17, 2018, GCC mailed a debt collection letter to Plaintiff Mollberg regarding an alleged debt owed to Citibank. A copy of this letter is attached to this complaint as Exhibit C.

47.     Upon information and belief, the alleged debt that GCC was attempting to collect was incurred by use of a consumer credit card account, used only for personal, family, or household purposes.

48.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Mollberg inserted by computer.

49.     Upon information and belief, Exhibit C is a form debt collection letter used by GCC to attempt to collect alleged debts.

7

50. <u>Exhibit C</u> includes the following offers to resolve the debt:

**OPTION 1**
We are willing to accept $451.45 in one payment to settle this account in full. This will save you $551.77 (55% off your current balance)!

**OPTION 2**
If you would like to settle, but don't have it all up front, we can offer you $601.93 in twelve equal payments: that means you will be paying $50.16 per month. This will save 40% off your current balance.

**OPTION 3**
If you cannot settle the balance, we may be able to negotiate an alternate payment arrangement that can fit you budget. Please call us today at 1-866-277-1877.

51. <u>Exhibit C</u> further states: "Please note that the offers listed below will expire on August 01, 2018."

52. The offer listed under "OPTION 3," however, includes no definite terms; it is completely open-ended, encouraging the consumer to call to "negotiate a different payment arrangement."

53. Upon information and belief, GCC and Citibank would be willing to "negotiate" any offer of settlement made by the consumer at any time.

54. The statement that the offer listed under "OPTION 3" will expire on August 1, 2018 is therefore false, deceptive, and misleading.

55. On or about September 21, 2018, GCC mailed another debt collection letter to Plaintiff Mollberg regarding the same alleged debt owed to Citibank. A copy of this letter is attached to this complaint as <u>Exhibit D</u>.

56. Upon information and belief, <u>Exhibit D</u> is another form letter, generated by computer, and with the information specific to Plaintiff Mollberg inserted by computer.

57. Upon information and belief, <u>Exhibit D</u> is another form debt collection letter used by GCC to attempt to collect alleged debts.

8

58.    Exhibit D includes the following offers to resolve the debt:

**OPTION 1**
We are willing to accept $451.45 in one payment to settle this account in full. This will save you $551.77 (55% off your current balance)!

**OPTION 2**
If you would like to settle, but don't have it all up front, we can offer you $601.93 in twelve equal payments: that means you will be paying $50.16 per month. This will save 40% off your current balance.

**OPTION 3**
If you cannot settle the balance, we may be able to negotiate an alternate payment arrangement that can fit you budget. Please call us today at 1-866-277-1877.

All payments must be made within 30 days of one another. All payments mailed to this office should be made payable to Citibank. Although this current settlement offer has an expiration date we are not required to renew the offer. Please call our office or visit us online to review your option.

59.    The unsophisticated consumer would be confused and misled by the offers in Exhibit D.

60.    Option 2 in Exhibit D purports to offer to resolve the account through a series of installment payments but, on its face, Exhibit D is confusing and misleading as to whether the consumer who made payments according to the schedules stated in Option 2 would actually resolve the debt.

61.    Option 2 in Exhibit D offers to settle the debt for $451.45 "in twelve equal payments," but also indicates that in accepting this offer the consumer "would be paying $37.62 per month."

62.    By paying $37.62 per month for twelve months, the consumer would actually be paying $451.44, which is one cent less than the purported amount of the settlement.

63.    The consequences of misleading a consumer with respect to settling a debt are much greater than misleading the consumer about the amount of the debt.  A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later.  *See e.g.*,*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).  Due to a few remaining dollars or cents of interest, however, Credit Control or

Capital One could continue to collect the remaining balance of the alleged debt, plus any additional interest that had accrued.

64.     Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2019 U.S. Dist. LEXIS 6321, at *8 (E.D. Wis. Jan. 14, 2019) (confusing settlement offers are "potentially deceiving as to the most basic element of the parties' relationship—the terms of payment for the debt"); *see also,Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments violated the FDCPA).

65.     Further, the representation that "all payments must be made within 30 days of one another" is confusing and misleading to the unsophisticated consumer.

66.     The unsophisticated consumer would understand the representation that "all payments must be made within 30 days of one another" to mean that the debt collector could avoid honoring the settlement anytime the consumer tendered a late payment.

67.     Upon information and belief, the consumer would have the option to cure any late payment as a matter of course. *See, e.g., Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (explaining that debt collectors frequently renew settlement offers).

10

68.     Upon information and belief, neither the debt collector nor the creditor, in fact, cancels a 12-payment settlement with the consumer simply because one of the consumer's payments was received a few days late.

69.     Moreover, the consumer has the option to cure any late payment as a matter of law.

70.     The settlement offer in "OPTION 2" is payable over 12 installments, and is thus a "consumer credit transaction" under Wisconsin law.  *See,* Wis. Stat. §§ 421.301(10), 421.301(30).

71.     Under Wisconsin law, the consumer has a "Right to Cure" any default arising from late payment under a consumer credit transaction before the debt collector or collection agency can accelerate the maturity of that transaction.  *See*, Wis. Stat. §§ 425.104 425.105.

72.     The forbearance contemplated in "OPTION 2" is a "consumer credit transaction."

73.     The underlying credit card debt is a standard credit card account.  It is a "loan" as defined by Wis. Stat. § 421.301(23) because it was "creation of debt pursuant to a credit card or similar arrangement other than pursuant to a seller credit card."

74.     The creditor of the debt is a "lender" as defined by Wis. Stat. § 421.301(22) because it is a merchant regularly engaged in the business of making consumer loans.  Wis. Stat. §§ 421.301(22); 421.301(25).

75.     The forbearance contemplated in "OPTION 2" is forbearance of a debt arising from a loan.  Wis. Stat. § 421.301(23).

76.     The forbearance contemplated in "OPTION 2" is forbearance by "lender" of a debt arising from a loan because the creditor is agreeing to forbear the loan.  Wis. Stat. § 421.301(23).

11

77. Further, Defendant is also a "lender" as defined by Wis. Stat. § 421.301(22) because it is a merchant regularly engaged in the business of offering forbearances on behalf of the creditor. Wis. Stat. §§ 421.301(22); 421.301(25).

78. The forbearance contemplated in "OPTION 2" is a "Consumer Loan" as defined by the WCA because it is a "Loan" that is payable in more than four installments. Wis. Stat. §§ 421.301(12); 421.301(30)(b).

79. The forbearance contemplated in "OPTION 2" is a "consumer credit transaction" as defined by the WCA because it is a "Consumer Loan," and "Consumer Loans" are expressly included in the definition of "consumer credit transactions." Wis. Stat. § 421.301(10).

80. A consumer who entered into the forbearance contemplated in "OPTION 2" would have the right to cure any alleged default in complying with the payment plan contemplated by "OPTION 2" prior to re-acceleration of the debt. Wis. Stat. §§ 425.103, 425.104.

81. The terms of a forbearance agreement like "OPTION 2" may provide that the consumer tender payments within thirty days, but the failure to explain in "OPTION 2" that the consumer would have the opportunity to cure any default under the payment plan is confusing and misleading to the unsophisticated consumer.

82. Neither the creditor nor the debt collector could, or would, "cancel" a settlement agreement like the one contemplated in "OPTION 2" or accelerate the maturity of the "OPTION 2" transaction until after it gave the consumer the right to "cure" any late payment.

83. Further, Option 3 in Exhibit D is plainly ambiguous as to whether the debt collector is actually extending Plaintiff Mollberg the opportunity to resolve her account through an installment plan with "a monthly payment [of] $10.03 per month."

12

84.     Upon information and belief, GCC had authority to allow Plaintiff to resolve her account through an installment plan with monthly payments in the amount of $10.03 per month.

85.     Upon information and belief, the purpose of the representation that GCC "may" be able to extend this offer was to induce the consumer to contact GCC by telephone, whereupon GCC could use aggressive and unconscionable high-pressure tactics to attempt to induce payments from the consumer.  *See, e.g., DeGeorge v. Fin. Recovery Servs.*, No. 11-cv-4288, 2012 U.S. Dist. LEXIS 140966 (E.D. Penn. Sept. 28, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices by sending letters that "required plaintiff to contact defendant to take advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication.").

86.     Plaintiff Mollberg was confused by Exhibits C & D.

87.     The unsophisticated consumer would be confused by Exhibits C & D.

### The FDCPA

88.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017));  *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

14

a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

89.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

90.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

91.     15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

92.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

93.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

15

94. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

95. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

96. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date the letter is sent to the consumer, and must state this amount in a manner that would not confuse the unsophisticated consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Chuway*, 362 F.3d at 948 ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.").

### The WCA

97. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

98. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

16

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

99.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

100.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

101.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

102.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

103.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

17

104.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

105.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I -- FDCPA

106.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107.    Count I is brought on behalf of Plaintiff Wojceiski.

108.    GCC represented the amount of the debt that GCC was attempting to collect in a confusing and misleading manner by failing to explain the difference between the "Total Grouped Amount Owing" and the "Current Balance."

109.    The unsophisticated consumer would be confused as to whether Defendant was attempting to collect only the "Current Balance" or the "Total Grouped Amount Owing."

110.    The unsophisticated consumer would be confused as to whether the "Total Grouped Amount Owing" included alleged debts that were owed to some creditor other than HSN.

111.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f), 1692f(1), 1692g(a)(1), and 1692g(a)(2).

18

## COUNT II -- WCA

112.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113.    Count I is brought on behalf of Plaintiff Wojceiski.

114.    GCC represented the amount of the debt that GCC was attempting to collect in a confusing and misleading manner by failing to explain the difference between the "Total Grouped Amount Owing" and the "Current Balance."

115.    The unsophisticated consumer would be confused as to whether Defendant was attempting to collect only the "Current Balance" or the "Total Grouped Amount Owing."

116.    Defendant attempted to collect portions of the balance that were not yet due.

117.    Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT III – FDCPA

118.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119.    Count III is brought on behalf of Plaintiff Kijek.

120.    Exhibit B is misleading to the unsophisticated consumer because it contains language that falsely implies that a future settlement only be available to Plaintiff Kijek if she makes regular monthly installment payments.

121.    Defendant therefore violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT IV - FDCPA

122.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint

123.    Count IV is brought on behalf of Plaintiff Mollberg.

124. By stating that offer listed under "OPTION 2" will expire by a certain date, Exhibit C is false, deceptive, and misleading because the offer is not a settlement offer with any definite terms, but rather an offer to negotiate "alternative payment arrangements" which would be available to consumers at any time.

125. Defendant therefore violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT V - FDCPA

126. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint

127. Count V is brought on behalf of Plaintiff Mollberg.

128. Exhibit D includes a settlement offer listed under "OPTION 2" which is contradictory; it informs the consumer that they to settle the debt for $451.45 "in twelve equal payments," but also indicates that in accepting this offer the consumer "would be paying $37.62 per month," which is actually one cent less than the purported total amount.

129. Exhibit D contains a plainly ambiguous and confusing "offer" in Option 3, the purpose of which is to induce the consumer to call the debt collector, whereupon the debt collector may use aggressive, high-pressure sales to tactics to induce the consumer into tendering payments.

130. Defendant therefore violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## CLASS ALLEGATIONS

131. Plaintiffs bring this action on behalf of five classes.

132. Class I consists of: (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) stating a "Current Balance" and also stating a "Total Grouped Amount Owing," (d) where the

letter sought to collect a debt owed to HSN and incurred for personal, family, or household purposes, (e) where the collection letter in the form represented by <u>Exhibit A</u> was mailed between July 17, 2018 and July 17, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Wojcieski is the designated representative for Class I.

133. Class II consists of:(a) all natural persons in the United States of America, (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) stating a "Current Balance" and also stating a "Total Grouped Amount Owing," (d) where the letter sought to collect a debt owed to HSN and incurred for personal, family, or household purposes, (e) where the collection letter in the form represented by <u>Exhibit A</u> was mailed between July 17, 2018 and July 17, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Wojcieski is the designated representative for Class II.

134. Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between July 17, 2018 and July 17, 2019, inclusive, (e) that was not returned by the postal service. Plaintiff Kijek is the designated representative for Class III.

135. Class IV consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit C</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between July 17, 2018 and July 17, 2019, (e) that was not returned by the postal service. Plaintiff Mollberg is the designated representative for Class IV.

136. Class V consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit D</u> to the complaint in this action,

(c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was sent between July 17, 2018 and July 17, 2019, inclusive, (e) and was not returned by the postal service. Plaintiff Mollberg is the designated representative for Class V

137.   Each Class is so numerous that joinder is impracticable.

138.   Upon information and belief, there are more than 50 members of each Class.

139.   There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-D violate the FDCPA and/or the WCA.

140.   Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

141.   Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

142.   A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

143.   Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)   actual damages;

(b)   statutory damages;

(c)   attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 17, 2019

                              **ADEMI & O'REILLY, LLP**

                    By:     /s/ Mark A. Eldridge
                            John D. Blythin (SBN 1046105)
                            Mark A. Eldridge (SBN 1089944)
                            Jesse Fruchter (SBN 1097673)
                            Ben J. Slatky (SBN 1106892)
                            3620 East Layton Avenue
                            Cudahy, WI 53110
                            (414) 482-8000
                            (414) 482-8001 (fax)
                            jblythin@ademilaw.com
                            meldridge@ademilaw.com
                            jfruchter@ademilaw.com
                            bslatky@ademilaw.com